UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | | |
|---|---|---|
| MELTON R. MORRIS, | ) | |
|               Plaintiff, | ) | |
| v. | ) | Case No. 11-CV-2006 |
| | ) | |
| AMANDA VOSS, et al. | ) | |
| | ) | |
|               Defendants. | ) | |

**OPINION**

"[H]aving stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course."

   *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

This case is about whether a county jail facility failed to fulfill its duty to protect a prisoner from an attack by other detainees. The case is before the court on Defendants' Motion for Summary Judgment (#44). While being detained before trial at the downtown Kankakee County Detention Center, Plaintiff was placed in a day room with other detainees. There, two detainees had just been beaten up, allegedly by certain gang members. Plaintiff, concerned, asked one of the defendants, correctional officer Tonya Taylor, to pull him out of the day room, call a sergeant, or otherwise protect him from being preyed on. Defendant Taylor did nothing. Some time later, Plaintiff was indeed beaten up by the gang members so severely that he lost consciousness. Taylor said that she had seen them fighting but thought it was only "horse-playing". When Plaintiff spoke to the shift commander after the attack, the commander revealed that the facility had been having a hard time dealing with the influx of gang members, and

suggested that Plaintiff learn to fight back next time. Plaintiff asserts that Defendants failed to protect him during this encounter.

This court has carefully and thoroughly reviewed the arguments of the parties and the documents provided, including the affidavits provided and the transcript from Petitioner's deposition. Following this careful consideration, Defendants' Motion for Summary Judgment (#44) is GRANTED in part and DENIED in part.

## Background[1]

On August 20, 2010, Plaintiff was booked into the Cook County Jail as a pre-trial detainee, where he remained until his October 23, 2010, transfer to the Kankakee County Department of Corrections (#45 Exh. A ("Dep."), pp. 28, 52). Between October 23 through November 5, 2010, the Kankakee County Department of Corrections housed Plaintiff at its newer facility, the Jerome Combs Detention Center ("JCDC"). While Plaintiff was housed at JCDC, he did not have any problems or altercations, gang-related or otherwise, with other detainees or officers (Dep. 55-57).

On November 5, 2010, the Kankakee County Department of Corrections moved Plaintiff, along with 11 other detainees, to its older facility in downtown Kankakee (Dep. 55-58). On that day, Plaintiff was brought to the day room by Defendant Taylor, a correctional officer. Two other detainees, who looked as if they had been beaten up, approached Plaintiff and told him that gang members were present who belonged to the Against the Grain gang (ATG) (Dep. 64-65,

---

[1] Facts are taken from Defendants' Statement of Undisputed Material Facts when supported by Plaintiff's deposition. Defendant further affirmatively states that for the purpose of the present motion, Defendants treat Plaintiff's statements as constituting undisputed material facts.

67-68, 79). Plaintiff told Defendant Taylor: "Look, there is something going on up here. I am hearing guys getting beat on on the other side here, and these guys right here said they just got jumped on. I don't know if you know anything about ATG, but that's what they are telling me these guys are up here doing." (Dep. 121). Taylor walked around the day room, took a cursory look, and upon her return, told Plaintiff that "Ain't nothing going on around here." (Dep. 121). Plaintiff further told Taylor, "Mrs. Taylor, could you get somebody? I want to talk to a sergeant or somebody. I don't want to stay up here with all this. I am a little too old for this." A detainee next to Plaintiff said, "I was jumped on, and I ain't trying to stay up here." Taylor asked, "All y'all don't want to stay up here?" Plaintiff responded, "No, I don't. I don't. I am speaking for me. I don't want no part of this." Taylor responded, "Now y'all are getting ready to have me do some extra work," and then subsequently, "You are going to make me do extra work? For what? Ain't nothing going on." Plaintiff responded, "Yeah, it is. They just got jumped on." Taylor responded, "Well, I didn't see anything." Taylor then left. (Dep. 123-124). Half an hour later, Taylor returned. Plaintiff said, "I just told you about what is going on around here. They are gang banging. They are jumping on these guys. These guys just told me the same thing. It just seems as if you just want to ignore me." Taylor responded, "No, it's not that I am ignoring you. I am a busy person. I'm busy." Plaintiff responded, "So you are that busy that you don't care?" Taylor responded, "Well, I don't see anything." (Dep. 125-126).

After 10 or 15 minutes, the interlock in the day room opened. Soon after, Plaintiff was attacked by several other detainees and beaten until he lost consciousness. (Dep. 127-129). His belongings, consisting of, among other things, his prison-issued tote bucket and soap, were also stolen. (Dep. 128-129). About a half-hour to an hour after he regained consciousness, Taylor

returned to the day room. Plaintiff told her that he had been beaten up. Taylor told Plaintiff that she had watched the incident on the surveillance cameras, but did not intervene because she "thought these guys were horse-playing. I thought all of this was just them playing." (Dep. 107-08, 140). Taylor left and returned with more officers. (Dep. 132).

Plaintiff was processed and brought to talk to the shift commander. (Dep. 136.) An officer present there told Plaintiff that the shift commander's name was Voss, which is why Plaintiff named "Corporal Voss" as a defendant, even though Voss is the wrong defendant. (Dep. 136). The shift commander that Plaintiff spoke to was male. (Dep. 137). Corporal Voss is Amanda Voss, who is female. (#45, Exh. B, "Voss Aff."). Plaintiff testified that the shift commander told him that "you need to learn how to fight back then because you mean to tell me you let them little dudes jump you?" (Dep. 138). The shift commander further said, "Yeah, this ATG gang is just so tough, and the County can't contain them, so they sent them to us. Don't get me wrong. Y'all let them do what they do." (Dep. 139). He said, "They have been a problem all around. They have been a problem all around." (Dep. 139). Finally, he said, "Yeah, that's why they cleared that floor because these same individual dudes jumped some guys a week or two prior. That's why that whole one through five cell side was empty." (Dep. 140).

Five days later, on November 10, 2010, Plaintiff was being escorted to a doctor's appointment when another detainee attacked him. (Dep. 91-92). Two correctional officers arrived and maintained order. (Dep. 96). Neither Defendant Taylor nor Defendant Voss were present during this incident. (#45 Exh. C, "Senesc Aff.").

**Procedural Posture**

Plaintiff filed his Complaint (#1) on January 6, 2011. On August 26, 2011, this court held a merit review pursuant to 28 U.S.C. § 1915A and found that Plaintiff stated a valid § 1983 claim under the Fourteenth Amendment by alleging that Defendants Taylor and Voss failed to protect him, but dismissing all claims against Defendant Bukowski. (Text Order of August 26, 2011). On February 16, 2012, Plaintiff filed a Motion to Amend (#37) his Complaint (#1), which this court denied as untimely. (Text Order of February 17, 2012). On November 29, 2012, Defendants filed their Motion for Summary Judgment (#44). Plaintiff did not file a response.[2]

**Analysis**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2] Notably, although Plaintiff filed a Change of Address (#38) on February 29, 2012, indicating that he was transferred to a work-release program at Westside ATC, 121 N. Campbell, Chicago, IL 60612, the Illinois Department of Corrections closed that facility on August 31, 2012.
http://www.ilga.gov/commission/cgfa2006/upload/DOCRecommendationforWestsideATC.pdf, http://www2.illinois.gov/idoc/facilities/Pages/WestSideAdultTransitionCenter.aspx. Plaintiff failed to file a follow-up change of address notice. A search of the Illinois Department of Corrections for Plaintiff's IDOC number, K53015, reveals that he was relocated to the Crossroads ATC. The Clerk's office has been notified and an address update has been effectuated in this docket.

255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986*); Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. If it is clear, based upon the undisputed facts, that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only proper, but mandated. *See Padula v. Leimbach,* 656 F.3d 595, 600–01 (7th Cir. 2011).

**I. Defendant Voss**

To have individual liability under § 1983, a defendant must have been personally involved in the alleged constitutional deprivation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Although Plaintiff avers in his Complaint (#1) that Voss was the shift commander at the November 5, 2010 incident, in his later deposition, he recants and indicates that it could not have possibly been Voss, since the shift commander was male and he later learned that Voss is female. Further, Voss testified in her affidavit that she is female and was not present at the November 10, 2010 incident. Accordingly, as Defendant Voss had no personal involvement with either the November 5 or November 10 incidents, summary judgment must be granted in her favor.

**II. Defendant Taylor**

*November 4, 2010 incident*

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This protection extends to both

convicted prisoners and pretrial detainees. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003). The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees from punishment and places a duty upon jail officials to protect pre-trial detainees from violence. *Fisher v. Lovejoy*, 414 F.3d 659, 661 (7th Cir. 2005). "[T]o survive summary judgment on these claims against the jail officers in their individual capacities, [Plaintiff] must demonstrate a genuine issue of material fact with respect to the officer's deliberate indifference to his safety needs." *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). "Demonstrating deliberate indifference towards a prisoner's safety needs requires a showing that the inmate was incarcerated under conditions posing a substantial risk of serious harm, and a showing that individual prison officials had subjective knowledge of the risk of harm, which they personally disregarded." *Id.* (internal citations and editing marks omitted.)

"The first prong of a failure to protect claim—considered the objective prong—requires a plaintiff to allege that he is incarcerated under conditions posing a substantial risk of serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (internal quotation marks omitted). There are two elements in this prong: a serious harm, and a substantial risk of that serious harm. "[A] beating suffered at the hands of a fellow detainee. . . clearly constitutes serious harm, as being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 910-11. Plaintiff testified that he was beaten so severely that he lost consciousness. This is uncontrovertibly a serious harm that serves no penological purpose. Defendants argue, however, that the conditions of his confinement did not pose a substantial risk of a forthcoming attack. They point to Plaintiff's failure to name specific detainees as having made specific threats, Plaintiff's unawareness of the ATG gang before his

assault occurred, and to having been incarcerated at a different institution for almost two-and-a-half months without suffering an attack. In essence, Defendants claim that that Plaintiff only had "a generalized, subjective fear of being assaulted", *Golden v. McGuire*, 07 C 3304, 2009 WL 971416 (N.D. Ill. Apr. 8, 2009) (unpublished); *see also Anderson v. Godinez*, 94 C 7757, 1997 WL 786653 (N.D. Ill. Dec. 16, 1997) (unpublished), which does not rise to the level of being a "specific knowledge of a threat" that is cognizable as a "substantial risk". *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

But surely, the situation here is more than just vague notions of threats and shady characters. According to Plaintiff's deposition, and Defendants do not contest those statements for the purpose of this motion, the shift commander was clearly aware that not only was there was a gang violence problem at the Kankakee facility, but that "this ATG gang is just so tough, and the County can't contain them," so Plaintiff's only defense was to either "let them do what they do" or "learn how to fight back... [when] the little dudes jump you". In fact, the prison cleared five cellblocks on a floor because "the same individual dudes jumped some guys a week or two prior." These statements indicate that the facility management was aware that there was an ongoing threat. As for a specific incident, Plaintiff informed Taylor that two other detainees *had just been beaten up* by the ATG gang and yet she did nothing except take a tour around the day room and see nothing was afoot. That was apparently enough justification for her to conclude that there was no threat. What did she expect? Thugs in the process of assaulting other detainees would not stop when a correctional officer walked by? There were a limited number of detainees in the day room. No detainee enters or exits except at the behest of and under the watchful eye of the correctional officers. Of all the detainees in the day room, some of them were

obviously assaulting others. Of course Plaintiff didn't know which ones were doing the beating, only those who bore the marks of being beaten up since the ATG members had assaulted them before he got there. The knowledge of an ongoing threat, combined with the specific advisement that other detainees, in close temporal and physical proximity to Defendant, had been beaten up by gang members *indiscriminately* assaulting other detainees within the closed environment of the day room, is sufficient to create a substantial risk that he might be beaten up as well. This risk is evaluated not in hindsight, but with the facts known to the prison at that time. To require Plaintiff to provide any more specificity would be to require he gather affidavits from the gang members stating that he was next in queue. *See Brown*, 398 F.3d at 915 ("It is well settled that deliberate indifference may be found though the specific identity of the ultimate assailant is not known in advance of assault.") (discussing cases).

"To meet the second, subjective prong of a failure to protect claim, a plaintiff must establish his custodians' deliberate indifference to that substantial risk of serious harm." *Brown*, 398 F.3d at 913. To show deliberate indifference, Plaintiff "must demonstrate that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (internal quotations marks omitted). Taking the evidence in the light most favorable to non-movant Plaintiff and drawing all inferences in his favor, Taylor had actual and specific knowledge of an impending harm that could be easily preventable by segregating the ATG members from the other detainees on either an ongoing basis or on a case-by-case basis. Further, Plaintiff attests that Taylor admitted that she saw the assault on the surveillance monitor, but thought that they were merely playing. Although she

denies having "actual knowledge" *per se*, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Haley v. Gross*, 86 F.3d 630, 642 (7th Cir. 1996) ("A jury may infer actual knowledge based on the conspicuous nature of a risk."). As the Seventh Circuit has held that "[r]epeatedly stating that he would 'see what he could do' and 'check into the situation,' without ever actually doing anything, was not an acceptable response," *Haley*, 86 F.3d at 642, a correctional officer who knows that a dangerous prison gang was assaulting other detainees, has first-hand knowledge that other detainees had been assaulted, watches a physical alteration on the monitor while it is occurring and yet thinks it "horse-play" and does not intervene, is neither an acceptable nor reasonable response, and whose credibility may be presented to a jury.

Taking all the facts in the light most favorable to Plaintiff, a material question of fact remains whether Taylor had been deliberately indifferent to the risk of substantial harm not only when Plaintiff warned her about the gang assaults, but also *when she watched him being beaten up on the monitors and did nothing about it*. It is also curious that detainees in the day room would be left without supervision for half an hour to an hour.

*November 10, 2010 incident*

Plaintiff testified, and Defendants do not disagree, that Taylor was not involved in the November 10, 2010 incident. Because she was not personally involved, summary judgment must be granted to her as to this allegation. *Palmer*, 327 F.3d at 594.

- 10 -

*Qualified immunity*

Defendant Taylor argues that regardless of the findings above, she is protected by qualified immunity. This court does not agree. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Plaintiff has the burden to defeat qualified immunity by pointing to "a clearly analogous case establishing a right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009).

In *Grieveson*, the prisoner-plaintiff there attested that a correctional officer witnessed him being assaulted by other inmates when they stole his personal commissary items and his food. *Grieveson*, 538 F.3d at 778. That officer later allegedly commented to the plaintiff that he needed to "learn how to fight harder or don't come to jail." *Id*. The Seventh Circuit held that if the correctional officer defendant "did witness an inmate assault, but failed to intervene, his actions would seemingly constitute a paradigm case of deliberate indifference." *Id.* The case here is different in that Taylor witnessed Plaintiff being assaulted by other inmates until he lost consciousness and did nothing about it, while it was the shift commander who told him to learn to fight back. However, *Grieveson* clearly established that a correctional officer who witnesses an assault on an inmate and fails to intervene is not protected by qualified immunity.

Similarly, in *Snead*, a prisoner-plaintiff testified that another inmate attacked him until he was beaten unconscious while in the presence of several correctional officers. *Snead v. Unknown No. of U.S. Bureau of Prisons Corr. Officers*, 308 F. App'x 18, 19 (7th Cir. 2009) (unpublished). The Seventh Circuit held that "[r]egardless of how an inmate assault begins, prison officers must take reasonable steps to protect inmates from violence inflicted by one another… [because] prison guards were not free to watch it play out." *Id*. at 20. Accordingly, because both *Grieveson* and *Snead* are clearly analogous cases establishing that correctional officers have a duty to intervene when they see an inmate being assaulted, Taylor is not entitled to qualified immunity at this stage in the proceedings.

IT IS THEREFORE ORDERED THAT:

(1) Defendant Voss's Motion for Summary Judgment (#44) is GRANTED.

(2) Defendant Taylor's Motion for Summary Judgment (#44) is GRANTED as to the November 10, 2010 incident and DENIED as to the November 4, 2010 incident.

(3) The Final Pretrial Conference on March 8, 2013 and the jury trial previously set for March 25, 26, and 27, 2013, is VACATED.

(4) The Court will now attempt to recruit counsel to represent Plaintiff in further proceedings and jury trial in this case.

(5) A telephone status conference between the court, Plaintiff, and defense counsel is set for 9:30 A.M. on Wednesday, March 27, 2013. The Court will initiate the call.

(6) Plaintiff is reminded to advise the Court of any change in his address or telephone number pursuant to Local Rule 16.3(K). Failure to do so will result in dismissal of Plaintiff's case.

ENTERED this 20th day of February, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE